**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DOMINICK GIAMPAOLO #R04860, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.07 C 7154 |
| | ) | Judge John W. Darrah |
| TERRY McCANN et al. | ) | |
| | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| Defendants. | ) | |

**MOTION TO DISMISS PLAINTIFF'S INITIAL COMPLAINT**

NOW COME the Defendants, TERRY McCANN, JOHNNIE FRANKLIN, LEONARD

GARBS, CLARENCE WRIGHT, ROBERT CATTANEO, PEGGY HESTER, JEFFREY NURSE,

CHARLES PHELPS, LT. JACKSON, MICHAEL HOPKINS, CLARENCE EGBE, JENINE

DOUGLAS, SEYMOUR WHITE, LESTER HAWK, ANTHONY BUSH and KRUT JOSEPH, by

and through their attorney, LISA MADIGAN, Attorney General of Illinois, and submit their Motion

to Dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) as follows:

**INTRODUCTION**

On December 20, 2007, Plaintiff, Dominick Giampaolo filed a complaint with this court

alleging that sixteen employees of the Illinois Department of Corrections (hereinafter "IDOC")

violated his constitutional rights. Giampaolo is currently incarcerated in the Danville Correctional

Center and is serving a ten year sentence for criminal sexual assault and solicitation for kidnaping.

The present action is the fifth Federal lawsuit that Giampaolo has filed within the last three years.

Giampaolo's most recent Complaint is being brought pursuant to 42 U.S.C. § 1983.

In the present case, Giampaolo attempts to allege violations of his Eighth Amendment right

to be free from Cruel and Unusual Punishment, his First Amendment Right to Freedom of Speech,

his First Amendment Right to Freedom of Religion and his Fourteenth Amendment Right to Due Process. Giampaolo is suing the sixteen employees in both their individual and official capacities. He is seeking both injunctive relief and one million dollars in punitive, nominal and compensatory damages. (Cmpl., ¶ 11, par. VI). Giampaolo is also seeking to have this Honorable court order Stateville Correctional Center to change various institutional policies and to have Stateville personnel expunge Giampaolo's disciplinary record. (Cmpl., ¶ 11, VI).

In the present case, the allegations contained in Giampaolo's complaint stem from his short time as a Writ Guest at the Stateville Correctional center from April 18, 2007 to May 2, 2007 and from May 23, 2007 to June 6, 2007, a total of 30 days. (Cmpl., ¶ 4, par. 1). Giampaolo's Complaint alleges that Defendants Hester, Joseph, Hopkins, Egbe, Bush, Hawk, Douglass, Nurse, Jackson, Garby and Franklin violated his Eighth Amendment Right to be free from Cruel and Unusual Punishment by denying him a pillow. (Cmpl., ¶¶ 8-9, par. 4). Giampaolo's Complaint further alleges that Defendants Hester, Joseph, Bush, Hawk, Douglass, Nurse, Jackson, Garby and Franklin violated his Eighth Amendment Right to be free from Cruel and Unusual Punishment by denying Giampaolo eight hours of uninterrupted sleep for the 28 nights that he was housed in Stateville. (Cmpl., ¶¶ 6-7, par. 3).

Furthermore, Giampaolo's Complaint alleges that Defendant McCann, the Warden of Stateville Correctional center violated both his Eighth Amendment Right to be free from Cruel and Unusual Punishment and his Fourteenth Amendment Right to due process. (Cmpl., ¶¶ 9-10, par. 5-6). Giampaolo alleges that Defendant McCann maintains an unconstitutional policy that writ guests who are temporarily being housed at the Stateville Correctional center are not allowed to bring all their personal property with them from their original institution. (Cmpl., ¶ 10, par. 5). He alleges that

2

he was not allowed to bring his books, magazines, electronics, pens, envelopes, or food to the Stateville Correctional center.  (Cmpl., ¶ 10, par. 5). Giampaolo's Complaint alleges that the general population inmates at the Stateville Correctional center have more privileges than those inmates that are placed there temporarily.  (Cmpl., ¶ 10, par. 5). Giampaolo alleges that the Stateville showers were cold and dirty and that his cell was filthy and that he was not given cleaning supplies to clean his area. (Cmpl., ¶ 10, par. 5). He alleges that while at Stateville, no one did his laundry and he was therefore forced to wear the same jumpsuit for 28 days.  (Cmpl., ¶ 10, par. 5). Finally, he alleges that general population inmates at Stateville have phone access and day-room time but he along with other temporary guest at Stateville do not get those privileges.  (Cmpl., ¶ 10, par. 5). Giampaolo alleges that Defendant McCann has created and maintained these conditions in an effort to retaliate against prisoners who are challenging their convictions in court.  (Cmpl., ¶ 10, par. 5).

Moreover, Giampaolo alleges that Defendants Wright and Phelps violated his First Amendment Rights of Freedom of Speech and Freedom of Religion and his Fourteenth Amendment Right to Due Process when the Officers performed a strip search of Giampaolo in the presence of other male inmates. (Cmpl., ¶¶ 5-6, par. 2). Giampaolo also argues  that being strip searched in front of other inmates could cause a safety and security risk because he knows that 33% of all inmates are homosexuals. (Cmpl., ¶ 6, par. 2). He also alleges that he contracted Athletes Feet from having to stand barefoot on the floor. (Cmpl., ¶ 6, par. 2). Finally, Giampaolo alleges that his rights to freedom of speech and due process were violated when Defendants Wright and Phelps warned him that he would be sent to segregation for insubordination if he did not comply with their orders to cooperate with staff during the strip search**.** (Cmpl., ¶ 6, par. 2).

Finally, Giampaolo alleges in his Complaint that defendants White and Robert Cattaneo

(referred to in Giampaolo's Complaint as (LNU) Bob) were deliberately indifferent to his medical needs when they refused to give him medication for his ulcer, arthritis, irritable bowel syndrome and allergies. (Cmpl., ¶¶ 4-5, par. 1). Giampaolo alleges that Defendant White did not give him a special diet for his ulcer and fish allergies. (Cmpl., ¶¶ 4-5, par. 1). He also alleges that Defendant Cattaneo and White refused to give him a low bunk bed in a non-smoking cell. (Cmpl., ¶¶ 4-5, par. 1). Giampaolo states in his Complaint that he suffered a ruptured eardrum at the Danville Correctional Center and that while staying in Stateville as a Writ Guest, Defendant Hopkins made loud noises over the intercom which caused Giampaolo hearing loss. (Cmpl., ¶¶ 4-5, par. 1). Giampaolo alleges that both Defendants Hopkins and Egbe refused to get Giampaolo medical attention from the Stateville medical staff. (Cmpl., ¶¶ 4-5, par. 1).

## STANDARD

United States Federal Courts require notice pleading. In the case at bar, Plaintiff does not adequately state a claim for relief therefore his Complaint must be dismissed. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12 (b)(6) does not test whether the plaintiff will prevail on the merits but instead whether the claimant has properly stated a claim. *See* Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The Court may dismiss a Complaint for failure to state a claim only if "it is clear that no relief could be granted under any set of facts that could be provided consistent with the allegations." Hishon v. King and Spaulding, 467 U.S. 69, 73 (1984); *See also* Conley v, Gibson, 355 U.S. 41, 45-6 (1957).

The Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. Chancey v. Suburban Bus Div. of Regional Transp. Authority, 52 F. 3d 623, 626-7 (7th Cir. 1995)(citations omitted). However, the Court need not strain to find

4

favorable inferences which are not apparent on the face of the Complaint. <u>Coates v. Illinois State Board of Ed.</u>, 559 F.2d 445, 447 (7th Cir. 1977). Similarly, this Court is not required to accept legal conclusions either alleged or inferred from pleaded facts. <u>Nelson v. Monroe Regional Medical Center</u>, 925 F.2d 1555, 1559 (7th Cir. 1991), cert. den. 502 U.S. 903(1991). The Complaint must however, state either direct or inferential allegations concerning all elements necessary for recovery under the chosen legal theory. <u>Glatt v. City of Chicago Park District</u>, 847 F. Supp. 101, 103 (N.D. Ill. 1994). Furthermore, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions. <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1958 (2007). It is with these standards in mind that this motion must be decided.

## <u>ANALYSIS</u>

I.    **GIAMPAOLO'S COMPLAINT MUST BE DISMISSED BECAUSE HE HAS FILED A COMPLAINT CONTAINING AT MINIMUM THREE UNRELATED CLAIMS AGAINST MULTIPLE DEFENDANTS IN AN ATTEMPT TO AVOID PAYING FOR SEPARATE FILING FEES.**

In <u>George v. Smith</u>, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit held that unrelated claims brought by an inmate against multiple different defendants should be brought as separate actions. <u>George</u>, 507 F.3d at 607. In so holding, the Seventh Circuit reasoned that unrelated claims against different defendants belong in different lawsuits to ensure the inmates pay the required filing fees and so that each claim is reviewed pursuant to 28 U.S.C. 1915(g). <u>Id</u>. <u>George</u>, decided November 9, 2007, held that "[w]hen a prisoner does file a multi-claim, multi-defendant suit, the district court should evaluate each claim for the purpose of § 1915(g)" and that Plaintiff may incur strikes for *each* frivolous claim. <u>Id</u>., at 607-08. Pursuant to the Seventh Circuit's holding in <u>George</u>, each distinct claim must be evaluated separately under 1915(g).

Further, under Fed.R.Civ.P. 18(a) and 20(a) Giampaolo's retaliation claim against Defendant

McCann should be brought as a separate action. Giampaolo's Fist Amendment claims with regard

to a strip search against Officers Wright and Phelps should be brought as a separate action.

Giampaolo's deliberate indifference claims to medical needs against Medical Technician White and

(LNU) Cattaneo should also be brought as a separate action. None of the above mentioned

Defendants are alleged to have participated in the same transaction or series of transactions with

Defendants Hester, Joseph, Hopkins, Egbe, Bush, Hawk, Douglass, Nurse, Jackson, Garby and

Franklin. Moreover, the questions of fact that pertain to these Defendants are not common to all of

the other defendants in this case.  The Seventh Circuit Court held in George v. Smith, 507 F.3d 605,

607 (7th Cir. 2007), that under Fed.R.Civ.P 18(a) and 20(a), prisoners that bring suits alleging

unrelated claims against different defendants must file separate lawsuits. *See*,  George v. Smith, 507

F.3d 605, 607 (7th Cir. 2007).

## II.    NONETHELESS, GIAMPAOLO FAILS TO STATE A CLAIM FOR VIOLATION OF HIS EIGHTH AMENDMENT RIGHTS BECAUSE GIAMPAOLO DOES NOT HAVE A CONSTITUTIONAL RIGHT TO RECEIVE A PILLOW.

The Supreme Court has held that to adequately state a violation of the Eighth Amendment's

prohibition against cruel and unusual punishment in regard to an inmate's conditions of confinement,

both an objective and a subjective prong must be met. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

The objective prong asks whether the deprivation was sufficiently serious and looks to the conditions

themselves. Id. at 298. The subjective prong is met if a prison official acts with deliberate

indifference. Id. at 303. As defined in Farmer v. Brennan, 511 U.S. 825, 837 (1994), a prison official

acts with deliberate indifference when "the official knows of and disregards an excessive risk to

inmate health or safety."

The Official must be both aware of facts from which the inference could be drawn that a

6

substantial risk of serious harm exists and must draw the inference. To act with deliberate indifference, defendants "must want harm to come to the prisoner, or, at least, must possess total unconcern for a prisoner's welfare in the face of serious risks." Duane v. Lane, 959 F.2d 673, 676 (7th Cir.1992).

In the present case, Dominick Giampaolo alleges that during his stay at the Stateville Correctional center as a Writ Guest, Officers Hester, Joseph, Hopkins, Egbe, Bush, Hawk, Douglass, Nurse, Jackson, Garby and Franklin violated his Eighth Amendment Right to be free from Cruel and Unusual Punishment by denying him a pillow. (Cmpl., ¶¶ 8-9, par. 4). Following the analysis set forth in Seiter, Giampaolo's Eighth Amendment claim should be dismissed. Giampaolo's Complaint fails to describe a situation where the deprivation was sufficiently serious to warrant an Eighth Amendment violation. Further, although Giampaolo alleges that he informed Defendants of his discomfort, the fact remains that denying an inmate a pillow does not pose an excessive risk to an inmate's health or safety absent some other critical factor. In other words, it would have been impossible for the Officers to draw the inference that denying Giampaolo a pillow presented an excessive risk to his health or safety.

Moreover, Giampaolo named eleven correctional officers as the individuals that denied him a pillow, none of which belong to the Stateville medical staff or would have known that he suffers from severe back pain. The Seventh Circuit has continually held that non-medical officials cannot be held liable for reasonably relying on the medical judgment of professionals. Greeno v. Daley, 414 F.3d 645, 653 (7th Cir.2005). In this case, if the Stateville medical staff did not find it necessary to issue Giampaolo a pillow, the Defendants, all of whom are correctional officers cannot be held liable for reasonably relying on the medical staff's judgment.

III.    **FURTHER, GIAMPAOLO FAILS TO STATE A CLAIM FOR VIOLATION OF HIS EIGHTH AMENDMENT RIGHTS BECAUSE HE HAS NO CONSTITUTIONAL RIGHT TO RECEIVE EIGHT HOURS OF UNINTERRUPTED SLEEP.**

Giampaolo alleges that he spent 15 days in April and 15 days in May of 2007 housed at the Stateville correctional center. He alleges that Defendants Hester, Joseph, Bush, Hawk, Douglass, Nurse, Jackson, Garby and Franklin violated his Eighth Amendment Right to be free from Cruel and Unusual Punishment by denying Giampaolo eight hours of uninterrupted sleep for the 28 nights that he was housed in Stateville.(Cmpl., ¶¶ 6-7, par. 3).

Giampaolo alleges in his Complaint that the reason he could not sleep for eight uninterrupted hours was because Stateville staff performed head counts at 9:00 p.m., 11:00 p.m., 6:30 a.m., 12:00 p.m. and 3:00 p.m. (Cmpl., ¶¶ 6-7, par. 3). Giampaolo also alleges that Stateville's policy of serving inmates breakfast at 2:30 a.m. and lunch at 9:00 a.m. also contributed to disturbing his sleep. (Cmpl., ¶¶ 6-7, par. 3). Finally, Giampaolo alleges that the Correctional Officers at Stateville did a poor job in managing the noise level in the cell house where he slept. (Cmpl., ¶ 7, par. 3).

The Seventh Circuit held that, "As this Court has noted in the past, 'a plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts…Allegations in a complaint are binding admissions…and admissions can of course admit the admitter to the exit from the federal courthouse.'" Gutierrez v. Peters, 111 F.3d 1364, 1374 (7th Cir. 1997), citing Jackson v. Marion County, 66 F. 3d 151, 153 (7th Cir. 1995).

In the present case, Giampaolo fails to state a claim that he suffered sleep deprivation at the hands of the Defendants because he actually pleads facts that show that the Defendants actions did not create an excessive risk to his health or safety. Giampaolo was transferred from Danville Correctional center and placed temporarily at the Stateville Correctional center so that he would be

able to attend court proceedings located near the Stateville Correctional Center. (Cmpl., ¶ 9, par. 5). He spent a total of 28 nights in Stateville. (Cmpl., ¶ 10, par. 5). The fact that Stateville personnel conducted head counts by knocking on cell doors does not constitute cruel and unusual punishment. Even coupled with the fact that the serving of breakfast and lunch also disturbed Giampaolo's sleep; Giampaolo's claims would still not rise to an Eighth Amendment violation. Moreover, the fact that Giampaolo alleges that the noise level in the cell house was rather high still does not amount to an Eighth Amendment violation being that he alleges that he was only there for a short duration and was subsequently transferred back to the Danville Correctional center. In Byrd v. Brannigan, 2000 WL 88689, 5 (N.D. Ill.) the court held that temporary discomfort that causes no real injury does not amount to an Eighth Amendment violation. Further, in Mason v. Sheahan, 1993 WL 376218, 5 (N.D. Ill.), the court dismissed an inmate's excessive noise claim holding that "Although the noise may have caused Williams discomfort, it must be remembered that "the Constitution does not mandate comfortable prisons." *See also*, Rhodes v. Chapman, 452 U.S. 337, 349 (1980).

IV.    **MOREOVER, GIAMPAOLO FAILS TO STATE A CLAIM FOR VIOLATION OF HIS EIGHTH AMENDMENT RIGHTS BECAUSE HE HAS NO CONSTITUTIONAL RIGHT TO BE ABLE TO BRING PERSONAL PROPERTY WITH HIM WHILE HE IS BEING HOUSED IN TEMPORARY PLACEMENT.**

Giampaolo's Complaint alleges that he was denied all the "privileges" that the general population in Stateville received. It should be reiterated as stated earlier 'a plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts…Allegations in a complaint are binding admissions…and admissions can of course admit the admitter to the exit from the federal courthouse.'" Gutierrez v. Peters, 111 F.3d 1364, 1374 (7th Cir. 1997), citing Jackson v. Marion County, 66 F. 3d 151, 153 (7th Cir. 1995).

Giampaolo's claim that he was prohibited from bringing any books, magazines, electronics, pens, envelopes, or food with him when being transferred from Danville to Stateville does not constitute either an Eighth Amendment violation or a Fourteenth Amendment violation. Giampaolo alleges that is unfair that general population inmates who are incarcerated in Stateville are allowed to have certain privileges while he is denied these privileges because he is a temporary writ guest who will be leaving the facility in a brief period of time. Giampaolo alleges that this Stateville policy is maintained by Defendant McCann, the Warden of Stateville and that the policy is a form of retaliation.

In <u>Robinson v. Stateville</u>, 890 F.Supp. 715, 718 (N.D. Ill. 1995), a similar argument was made by an inmate and the Court held that "Plaintiff's claim appears to raise an equal protection argument, since he alleges that the commissary privileges of segregation inmates were restricted, while the privileges of inmates in the general population were not affected. Although prison official cannot base the allocation of jobs or resources on impermissible factors such as an inmate's race, there is no indication that any such motivation was present in the instant case. Consequently, plaintiff cannot state an equal protection claim."  Similar to the holding in <u>Robinson</u>, this Court should also dismiss Giampaolo's equal protection claim because Giampaolo cannot show that Stateville's policy of prohibiting inmates from bringing  their personal property to Stateville when they are only being housed at Stateville on a temporary basis is based on an impermissible factor.

10

## V.     THE ELEVENTH AMENDMENT BARS ALL OFFICIAL CAPACITY CLAIMS FOR MONEY DAMAGES.

Official capacity suits are actions against the government entity of which the official is a part. Sandville v. McCaughtry, 266 F.3d 724, 732 (7th Cir. 2001)(citing Wolf-Lillie v. Sonquist, 699 F.2d 864, 870 (7th Cir. 1983)). In Pennhurst v. Haldeman, 465 U.S. 89, 100-101 (1984), the Supreme Court held that an unconsenting state cannot be sued in federal court. Unless Congress has chosen to override the Eleventh Amendment by legislating pursuant to its power under section 5 of the Fourteenth Amendment, see Fitzpatrick v. Bitzer, 427 U.S. 445 (1976) a state simply cannot be sued in federal court. This exception is not applicable in this case, nor has the State of Illinois consented to suit.

The Court in Pennhurst stated:

> This Court's decisions thus establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state. There may be a question, however, whether a particular suit in fact is a suit against the State. *It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought.*

465 U.S. at 100. (Emphasis added)

The Court further held that it makes no difference whether the Plaintiff seeks damages or injunctive relief. Id. at 102. The Eleventh Amendment bar to federal jurisdiction over a state and state agencies has been reaffirmed many times. See, e.g., Kroll v. Board of Trustees of Univ. of Illinois, 934 F.2d 904, 907 (7th Cir. 1991); Billman v. Indiana Dept. of Corrections, 56 F.3d 785, 788 (7th Cir. 1995); Scott v. O'Grady, 975 F.2d 366, 369 (7th Cir. 1992); Baxter v. Vigo County, 26 F.3d

11

728, 731 (7ᵗʰ Cir. 1994).   The Eleventh Amendment bar has also been applied to the Illinois

Department of Corrections.  Trotter v. Klincar, 748 F.2d 1177, 1181 (7ᵗʰ Cir. 1984), see also Walker

v. Rowe, 791 F.2d 507, 508 (7ᵗʰ Cir. 1986).  Even in cases brought under 42 U.S.C. 1983 raising

constitutional claims, the Eleventh Amendment bar remains.  Quern v. Jordan, 440 U.S. 332 (1979);

Kentucky v. Graham, 473 U.S. 159, 169 n.17 (1985).

**A.  Giampaolo Is Barred From Recovering One Million In Monetary Relief From The Defendants In Their Official Capacities.**

Official capacity suits are actions against the government entity of which the official is a part.

Sandville v. McCaughtry, 266 F.3d 724, 732 (7ᵗʰ Cir. 2001)(citing Wolf-Lillie v. Sonquist, 699 F.2d

864,870 (7ᵗʰ Cir. 1983)).  However, section 1983 "does not authorize suits against states." Id., at p.

733 (citing Power v. Summers, 266 F.3d 815, 818 (7ᵗʰ Cir. 2000)).  Therefore, "State officers in their

official capacities, like States themselves, are not amenable to suit for damages under Section 1983."

Arizonans for Official English v. Arizona, 520 U.S. 43, 69 117 S. Ct. 1055, 1069 (1997).

Courts have created a few exceptions.  American Soc. of Consultant Pharmacists v. Patla,

138 F.Supp.2d 1062, 1068 (N.D.Ill.2001)(citing Edelman v. Jordan, 415 U.S. 651, 666-67 (1974)

(plaintiff may sue state official alleging violation of federal law and federal court may award

prospective injunctive relief but not retroactive monetary relief).  While the Ex parte Young doctrine

allows a suit for injunctive relief to be brought in federal court against a state official acting in his

or her official capacity, it is clear that Ex parte Young does not allow a State or its departments to

be directly joined as parties.  American Soc. of Consultant Pharmacists v. Patla, 138 F.Supp.2d at

1070-71 (citing 209 U.S. 123, 160 (1908)).

In the case at bar, Giampaolo names sixteen Defendants, all of whom are either Correctional Officers or Medical Technicians that are employed by the Illinois Department of Corrections. The Ex Parte Young case established that a Plaintiff's remedy in cases where they are suing the Defendants in their Official Capacities is limited to injunctive relief. Consequently, Plaintiff's claims for monetary relief against Defendants in their Official Capacity must be dismissed.

WHEREFORE, the claims raised in sections II, III and IV should be dismissed as frivolous. Any remaining allegations should be dismissed pursuant to George and the Plaintiff's *in forma pauperis* status should be vacated because of the three strikes for three frivolous claims. Giampaolo should be required to pay the full filing fee before filing an amended complaint consistent with George and Federal Rules of Civil Procedure 18(a) and 20(a).


Respectfully submitted,

LISA MADIGAN

Attorney General of Illinois          By:    s/Austin E. Franklin
                                              AUSTIN E. FRANKLIN
                                              Assistant Attorney General
                                              General Law Bureau
                                              100 West Randolph Street, 13th Fl.
                                              Chicago, Illinois 60601
                                              (312) 814-3700

13