IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

*FILED*

SEP 08 2008 *Lcw*

SEP 08 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Dominick Giampaolo )
               Plaintiff, )      07cv 7154
    vs. )      Case No. 07 C 7154
Terry McCann, et al. )      The Honorable Judge
           Defendants. )      John W. Darrah Presiding

<u>MOTION FOR PRELIMINARY INJUNCTION</u>

Plaintiff , pro-se, hereby moves this Honorable court for a preliminary injunction, under the authority of Fed. Rules of Civil Procedure 65(a) enjoining Defendants, and their agents, servents, employees, representatives, and the persons in active cincert or participation with them from any of the following toward the Plaintiff and those named herein;

1. Subjecting Plaintiff to being transfered to any other facility for the purposes of attending court in the northern suburbs of Illinois such as Kane County, DuPage County, or McHenry County.

2. Transfereing the Plaintiff to any other facility (prison), without the Plaintiffs written agreement, that is of a higher security rating than the one Plaintiff presently occupies while this claim as captioned above is pending. Plaintiff is currently in a level '3' facility and has had no disciplinary reports in more than 2 years and thus there is no legitimate penalogical reason for any such transfer adn in the event any discipline is needed the present facility has a segregation unit.

3. Denial of Plaintiffs medical treatment he has currently or formerly been granted by doctors and medical staff hired by the Illinois Department of Corrections (hereinafer 'IDOC')

4. Tampering with Plaintiff or his witnesses through harrasment, coercion, and intimidation tactics.

5. Subjecting Plaintiff or his witnesses (listed in relevant part hereafter) to the conditions described of in the complaint.

6. Discussing Plaintiffs legal activities and medical conditions with any unauthorized persons.

7. Tampering with Plaintiffs incoming and/or outgoing mail.

8. Denyial or lessing of law library time and access.

9. Interference with Plaintiffs phone calls.

10. Issuance of disciplinary tickets both excessive and unusual.

11. Mental or emotional anguish through verbal assualts and comments by prison officials.

12. Retalitory transfers of the Plaintiff or his witnesses.

13. Transfering Plaintiff to court writs where such transfer would cause
    the Plaintiff serious medical difficulties (described herein) that
    cause Plaintiff pain, suffering, and could lead to permanent injury.

   Unless Defendants are restrained and enjoined by order of this court,
Plaintiff, and his witnesses, will suffer irreprable harm, injury, loss, and
damage in that they will be unable to challenge their constituional rights
violations in their cases without being transfered to Stateville C.C. or
similar facility, and thereby placing them in deplorable conditions as
described in the complaint as is IDOC's policy thereby subjecting them to;
unconstituional conditions of confinement, denial of emergency and needed
medical care and treatment, punishment worse than segregation inmates, and
being treated in a cruel and unusual manner as well as being subjected to
coercion, harrasssment, and retliation by the Defendants as fully described
in the complaint.
   In conjunction with Plaintiffs verified complaint and the information
contained in this motion, a memorandum of law, Plaintiffs medical records
proving his Anxiety attacks, and affidavits of Plaintiffs witnesses are
attached, hereby incorpoarated in substance and in fact, and made part hereof.
   Unless enjoined the Defendants, their agents, servants, employees,
employers, attorneys, and those in active participation with them will
continue their over **6 year** pattern of injury, coercion, and egregious violation
of inmates Constitutional rights, upon the Plaintiff, his witnesses as it is
IDOC's policy to transfer all inmates as writ guests for their attending of
court dates in the Northern suburbs of Chicago to Stateville Corr Ctr or
similar facility with conditions as described in the complaint.
   If this preliminary injunction is granted, the injury if any, to the
Defendants, if final judgment is not in thier favor will be inconsiderable.

I. Plaintiff alleges the following;

   A. Plaintiff, and his witnesses, are incarcerated inmates in the IDOC and
      are currently hosued at the Danville Corr Ctr, 3820 East Main in
      Danville, IL.

   B. Defendants are Terry McCann, Lt. Douglass, Lt. Nurse, Mr. Joseph,
      Ms. Hopkins, Mr. Egbe, Ms. Hester,Lt. Garby, Lt. Jackson, Mr Bush,
      lt. Franklin, Mr. Hawk, Mr. White, Mr. Bob (INU), Mr Phelps, Lt Wright
      of the Stateville Corr. Ctr- P.O. Box 112- Joliet, IL 60436.

      Relevant to this Motion and those in active participation with these
      Defendants are;

      Sandy Funk- Transfer Coordinator of IDOC;
      Roger E. Walker Jr- Director of the IDOC;
      Both- 1301 Concordia Ct, Springfield, Il 62794

   C. This matter involves the unconstitutional treatment of the Plaintiff
      and his witnesses by the Defendants subjecting Plaintiff and others
      to;
      Cruel and unusual punishment by subjecting Plaintiffs as writ guests
      to deplorable conditions of confinement, lack of medical treatment,
      and other constitutional deprivations described in the complaint.
      The immediate and real threat of injury exists in that the Plaintiff
      suffers from severe anxiety attacks as well as stress related conditions
      which, as shown herein, coincide with the Plaintiff going on writs to
      Stateville Corr. Ctr. The conditions are serious, ptoentially life
      threatening, and lack of medical care for writ guests has caused the
      Plaintiff permanent injury in the past.

I. (Cont.)

D. It is the policy of IDOC to hold inmates who have to appear at court
   in the Northern suburbs of Chicago at the Stateville Corr. Ctr.
     Plaintiff has had to be held there at least 9 times in the last
   six years and anticiaptes many more times in the near future.
     The real and immediate threat of injury due to Plaintiffs axiety
   attacks and stress related conditions; ulcer, migraines, and
   irritable bowel syndrome (hereinafter 'IBS') is evident hereafter,
   section 'E' and is certain to occur in the future if not prevented.

E. Plaintiff suffers from severe anxiety attacks which cause him
   painfull, debilitating, and terrifying cheat pains, bleeding ulcers,
   migraines, and comlete bowel obstruction due to IBS whenever he
   learns that he has to go back to Stateville C.C for a court writ.
     These attacks occur from days to weeks before the court writ and
   are not helped by any treatment from the sending institution and
   are always untreated by Stateville C.C.
     One such attack occured on 11-5-04, see attached EXhibit A-1,
   Plaintiffs medical file, for a court writ that he was transfered to
   Stateville C.C. on 11-12-04, see attached Exhibit A-2 transfer summary.
   The documents cleary indicate the Plaintiffs conditions and 'stress/
   panic' both by the sending and receiving facility but no treatment
   was given by either institution other thatn antacids by the Hill C.C.
     Another attack occured from 10-8-05 to 10-12-05 putting the Plaintiff
   in the informary for a court writ transfer of 10-24-05. The Plaintiff
   again experienced chest pains, ulcer pain, abdominal pain. see
   attached Exhibibts B1 thru B4 Plaintiffs medical records. It is very
   clearly noted on Exhibit B2 that the Plaintiffs 'EKG abnormal' and
   yet IDOC still transfered Plaintiff in pain and danger of permanent
   injury or death..
     Another attack occurred on 9-18-06 and 9-19-06 for a court writ
   transfer of 10-3-06 when again Plaintiff experienced severe chest
   pain, stomach pain, migraines, and bowel obstrcution/pain, see
   attached Exhibits C1-C3 Plaintiffs medical records. Exhibit C3
   shows the history of 'panic attacks' which were not effectively
   treated by the transfereing facility and were ignored by Stateville
   Corr. Ctr..
     As stated in the complaint the Plaintiff had suffered a perforated
   eardrum diagnosed on 4-9-07, see attached exhibits D1-D2 Plaintiffs
   medical records and when transfered to Stateville C.C. it was left
   untreated and was aggravted by the conditions there.
     Plaintiff has real, justifiable fears, of harm from lack of the
   medical treatment by Stateveille Corr. Ctr who routinely ignore writ
   guests medical needs.
     Plaintiff has attached the affidavit of Deametreas Whatley, a
   witness to such mistreatment, attached as Exhibits E1-E2, where he
   had pnemonia untreated until he returned 9after 9 months) from
   Stateville Corr. Ctr, The affidavits of other witnesses in support
   of this claim are attached as Exhibits F1 and F2.And F3
     The certainty of no medical care at Stateville C.C. and the
   inevitability of the Plaintiffs panic attacks makes the threat both
   immediate and real.

I. E. (Cont.)
Plaintiff has been diagnosed with 'Atypical chest pain and Pleurisy'
See attached Exhibit G1 thru G5 as well as well as IBS, see attached
Exhibit G6.

F. The conditions descrbied in Plaintiffs complaint clearly show
the unconstitutional conditions of confinement that exist at the
Stateville C.C. for writ guests.

G. By Defendants actions the Plaintiff will continue to suffer extreme
pain, mental suffering, and actual irrprable injury by the aggravation
of his ulcer, IBS, and chest pain with each incident amking the
underlying condition worse. The Plaintiffs conditions are serious
and can easily be prevented by the Defendants using alternative means
to bringing the Plaintiff to and from court OR by using other
acceptable and legal means to appear in court.

H. Plaintiff has no immediate or speedy remedy at law for the above
mentioned conduct of the Defendants, and this action for injunctive
relief is Plaintiffs only means for securing relief to avoid the
inevitable pain, suffering, and injrury caused by their actions or
inactions. Wherefore Plaintiff requests that this court;
  1. Issue a preliminary injunction pursuant to Fed Rules of Civ.
     Proc. 65 ordering Defendants, their employees, officers, agents,
     employees, employers, successors, attorneys, and all those in
     active concert with them to refrain from the activities listed
     in #'s 1-13 herein.
  2. Issue a permanent injunction perpetually enjoining the Defendants
     it officers, agents, employees, successors, attorneys, and all
     those in active concert and participation with them from the
     conduct listed in #'s 1-13 herein.

I. The balance of hardships is in Plaintiffs favor as the Defendants
have several alternative means to transporting the Plaintiff to and
from court. Relevant suggestions/alternatives include;
  1. Drive the Plaintiff to/from the court dates on the day of the
     court appearance. Danville C.C. is appx 2 hrs from the Plaintiffs
     counties he would need to appear in. Current policy would require
     the Plaintiff to take a 4 hr bus ride south in order to transfer
     to another bus to ride 4 hrs north then sit in a holding area for
     appx 6 hrs, wait for a minimum of 2 weeks to attend and return
     from court. The risk to Plaintiffs health is extremely high from
     the weeks of stress and pain versus a one day to/from trip.
  2. Illinois Statute 725 ILCS 5/106D-1 allows Plaintiff to appear
     by closed circuit television which Plaintiffs counties have the
     capability of. This would cost Defendants nothing and cause the
     Plaintiff no stress.
  3. Ill. Supreme Court Rule 185 allows for telephone appearances
     which all counties are capable of receiving and which would
     cost Defendants next to nothing and cause Plaintiff no stress.
  4. Circuit courts are reluctant to tell IDOC what to do but are
     willing to accomodate IDOC when requested and thus Defendants
     could request, and get approved, the video or telephone appearances
     so that Plaintiff could appear without risk to his health.

J. Plaintiff attaches his affidavit in support of this Motion and hereby
incorporates it, and all attached Exhibits, in substance and in fact.

MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION

The Plaintiff  is  entitled to a preliminary injunction.

   In determining whether a party is entitled to a preliminary injunction
courts generally consider several factors;
1) Whether the party will suffer irreprable injury;
2) The balance of hardships between the parties;
3) The likelihood of success on the merits; and
4) The Public interest.

Each of these factors are present, enabling this court to grant this
prelimnary injunction.

A) Plaintiff is threatened with irreprable harm.
   The various Defendants are fully aware of the policies of the IDOC
   for inmates that need to attend court in the northern Chicago suburbs.
   These inmates are known as 'writ guests'. It is certain that the Plaintiff
   and others will be held as writ guests at the Stateville Correctional
   Center in Joliet, IL (hereinafter 'Stateville').
   Since court 'writs' (Writ of Habeas Corpus As Testificandum) are
   mandatory and are necessary to challenge the constitutionality of a
   sentence, judgment, or claim and it is IMPERITIVE that inmates do so
   without the threat of irreprable harm, coercion, intimidation, witness
   tampering, or misconduct by IDOC staff. All of which is verified by Fact
   by the Plaintiff in the complaint on file with the court and the Motion
   and Exhibits of which this memorandum supports.
   The Plaintiff attempting this action once in the past with a suit
   settled and it was denied. Thereafter the Plaintiff was a 'writ guest'
   and was denied medical care for a perferated eardrum by Stateville staff
   who made fun of and deliberately caused more pain to Plaintiff. This
   caused the Plaintiff permanent hearing loss, irreprable harm. The complaint
   in this case details the claim and this Motion details the Plaintiffs
   other medical conditions as well.
   The Plaintiff suffers from Anxiety attacks, bleeding ulcers, migraines,
   and IBS. All of which are much worse just by the mere thought of going
   to Statevilee as a court writ. The fear is a valid one considering the
   Plaintiffs past expereince of being in pain and the subsequent hearing
   loss. The chest pains have caused irregular EKG's (as noted in the
   motion and exhibits) and to risk the Plaintiffs DEATH is unacceptable.
   The bleeding ulcer, migraines, and IBS are also ptoentially life
   threatening conditions that get worse each time the occur and which
   cause irreprable harm both physically and mentally.
   IDOC has been made aware of these conditions since at least 2002,
   see attached Exhibit H, and was made aware of Plaintiffs request for
   an alternative to being a 'writ guest' through the grivance process
   for which the Plaintiff has exhausted his remedies with no response.
   Plaintiffs previous case , Giampaolo v. Briley 05 C 6576, made them
   aware of the conditions and they have not improved. The particular
   harms detailed in the complaint, and motion for preliminary injunction,
   are clear violations of Plaintiffs constitutional rights against cruel
   amd unusual punishment.
   The complaint and Motion shows continuing deprivation of Plaintiffs,
   and other inmates, constitutional rights. The U.S. Supreme Court states
   that this in itself constitutes irreprable harm. Elrod v. Burns, 427
   U.S. 347,373; 96 S.Ct. 2673.

Briefly, in support of the claims in the complaint and the Motion for Preliminary injunction, the following is offered.

## NO MEDICAL ATTENTION

Although this claim is very detailed in the complaint and the Motion for Preliminary injunction the serious medical conditions complained of have been determined by courts as serious enough to require medical attention.

Plaintiff is routinely and as a matter of course denied medical attention both before and during his stays as a writ guest at Stateville. These denials are so widespread and prevelant as to be 'custom or policy' of the administration and staff. Plaintiff and his witnesses have observed it occur to themselves and other writ guests.

Plaintiff was diagnosed, and denied treatment for by Stateville, with chronic ulcer, arthritis, IBS, migraines, and axiety disorder casuing chest pains, diarhea, and abdominal pain. All serious medical needs. Westlake v. Lucas 537 F 2d 857; Massey v. Hutto, 545 F 2d 45.

The requests for medical care were reasonable, simple, and repeated to many medical techinicians and correctional officers. The denials caused undue suffering and irreprable harm. As in Westlake a prisoner who is allowed to suffer pain when relief is readily available has a cause of action against those who a deliberately indifferent.

InPlaintiffs circumstances this harm exists both BEFORE the writ transfer and during the stay at Stateville. The cell conditions at Stateville described in the complaint as well as the denial of medical treatment make it certain that Plaintiff will suffer severe pain and irrepable harm.

A serious medical need for purposes of establishing 8th Amendment cruel and unusual punishment claim, is one that has been diagnosed by a physician as mandating treatment. Versa v. Elyea 113 F2d 1211 (ND Ill 2000); Jones v. Natesha 151 F 2d 938 (7th Cir 2001).

The denials and delays by prison officials, doctors, and officers of the prescribed medication and for an environment that would not cause the Plaintiff harm have caused the Plaintiff unnecessary and wanton infliction of pain violating his 8th amendment rights. Estelle v. Gamble 429 U.S. 97, 106; Christy v. Robinson 216 F Supp 2d 398; Chance v. Armstrong 143 F 3d 698.

## CELL CONDITIONS

The conditions of the cells have and will cause the Plaintiff undue and unnecessary harm, pain, and suffering.

The cells in Statevilles F-House that contain writ guests are filthy and unsanitary. The matresses are stained with urine, feces, are moldy, and the cell is infested with roaches and visited by mice. The liniens are not changed and the laundry service is unavailable. These very issues against Menard C.C were addressed in Lightfoot v. Walker, 486 F Supp 504;

> "The mattresses are dirty , torn, badly stained, linen is old and filthy and infrequently changed. The sanitation of beds and linen is grossly deficient and incompatible with the departments own regulations. The unclean bedding creates an increased risk of infection for inmates in the segregation unit. Bacteria can grow in such bedding."

The IDOC has not learned from the lawsuits filed about such condtions. The lack of cleaning supplies exsasperated these conditions and by itself is an 8th amendment claim as in Johnson v. Pelker 891 F 2d 136,139 (7th Circ. 1989).

The excessive noise causing pain suffering and sleep deprivation and violates Plaintiffs constitutional right against cruel and unusual punishment. The noise is constant day and night caused by the inmates yelling...

## Cell Conditions (Cont.)

...banging on the cell doors, and officers banging on the doors to make inmates move during the many count times. The 7th circuit concluded in Antonelli v. Sheahan, 831 F 3d 422 that 'noise occured every night, often all night, interrupting or preventing his sleep' which stated a claim under the 8th amendment.

The small cell sizes and double occupancy is an 8th amendment violations as it causes stress, violence, and mental anguish. All cases on this subject and the standard of denying the recommended 55 sq ft per inmate were cases that inmates had a 'dayroom' and were not in their cells more than 10 hrs per day. OR cases of segregation inmates that were, for legitimary penalogical  reasons, were being punished for their prison behavior. Cell sizes and double celling is unconstitutional where, as detailed in the complaint, it engenders violence, tension, and psychological problems. French v. Owens 777 F 2d 305.

Overcrowding causing extrememly limited time out of cell and courts need to factor in the cell size, opportunities to leave the cell, duration of confinement. Wellman v. Faulkner 715 F 2d 269 (&th Cir 1983)

The fact that inmate writ guests get no books, magazines, radios, TV's or anything to distract the SOLITARY confinement clearly engender the psychological stress that Stateville does not even subject their own segregation inmates too, Denying the Plaintiff an easy, quicker, less expensive alternative to appear for court serves no legitimate penalogical interest. The totality of these conditions further shows the danger to the Plaintiffs health and safety and thus it is deliberate.

### NEED FOR COURT SUPERVISION

As previously stated and shown in the complaint and Motion and herein IDOC has not corrected these conditions in its prisons despite being sued and it is still thier policy the writ guests such as the Plaintiff are held in these conditions described in the complaint when attending court in the northern Chicago suburbs.

The need for court supervision is one of the ingredients in the courts discretionary formula for determining whether to issue a preliminary injunction. Zurn Constructors Inc. v. B.F. Goodrich Co 685 F Supp 1172.

THIS court has previously enjoined Stateville C. C. from violating inmates constituional rights AND for violating state laws which constitutes irreprable harm and shows continuing conduct. Williams v. Lane 644 F Supp 1379 (ND Ill, concerning Stateville)

A series of incidents closely related, such as described by the Plaintiff and the history of litigation mentioned herein, may disclose a pattern of conduct amounting to deliberate indifference to the medical and constitutional rights of Plaintiffs and in those circumstances the suffering is INEVITABLE and the court should not hesitate to use its injunctive powers in those incidents. Lightfoot v. Walker 486 F Supp 504.

A pattern of similar instances presumptively indicates that prison administrators have, through their programs and procedures, created an environment in which negligence is unacceptably likely. This court so ruled in Robert E. v. Lane 530 F Supp 930,940 (7th Cir 1981), AGAIN against Stateville C.C.

An Injunctive movant must provide proof indicating that harm is certain to occur in the future. Housing Study Group v. Kemp 486 F Supp 321.

IT IS A CERTAINTY that due to IDOC policy that Plaintiff will be held as a writ guest in deplorable conditions at Stateville C.C..

IT IS A CERTAINTY that based upon the history of these condtions from 2002 to present, as presented in Exhibibt H and previous suit 05 C 6575 that it is INEVITABLE these conditions will persist and endanger the Plaintiff.

Need For Court Supervision(Cont.)

The defendants past and present misconduct indicates a strong likelihood of future violations. <u>Green v. McCall</u> 822 F 2d 284. Plaintiff has sufficiently alleged with affidavits and exhibits that the misconduct, and Plaintiffs MEDICAL CONDITION, has existed for years and will cause the Plaintiff harm.

If injunction is denied, IT IS A CERTAINTY that the Plaintiff will be brought to Stateville for his court writs in the Northern Chicago suburbs and it is even MORE certain that the conditions fo confinement will be the same as they have been for over 6 years. The coercive effects and stress anticipating the torture Plaintiffs experienced in the past are unavoidable as long as the Plaintiff is subjected to the Defendants policies. No adequate remedy of law exists where there is evidence that the Plaintiff will be subjected to constant and frequent transgression of a continuing nature. <u>Hamer Holding Group Inc v. Elmore</u> 202 Ill App 3d 994; 560 NE 2d 907. Plaintiff has demonstrated the certainty of a recurrance of unlawful condcut, threats, denial of medical needs, and stressfull procedures. <u>Adams Apple Dist Co v. Zagel</u> 501 NE 2d 302.

ONE DOES **NOT** have to await the continuation or consumation of threatened injury to obtain preventative relief. <u>Pennsylvania v. West Virginia</u>, 262 US 553,593; 43 US S.Ct 658. As stated the continuing deprivation of Constitutional rights constitutes irreprable harm. <u>Elrod v. Burns</u>, Id and the principle has been applied to prison litigation. <u>Williams v Lane</u> <u>646 </u>F Supp 1379 (ND Ill affirmed by 7th Circ)

## B. THE BALANCE OF HARDSHIPS FAVORS THE PLAINTIFFS

In deciding whether to grant preliminary injunction courts ask whether the suffering of the moving party, if the motion is denied, will outweigh the suffering of the non-moving party if the motion is granted. See <u>Mitchell v. Cuomo</u> 748 F 2d 804,808.

In case at bar the suffering of the Plaintiff, and the suffering in the future based upon repititious acts of willfull and wanton misconduct of teh Defendants is the important factor. The purpose of the complaint, and the Motion for the Injuction, centers around the many factors that Plaintiff suffers as a result of being a writ guest at the Stateville Corr. Ctr and the unconstitutionally cruel and unusual punishment that are worse than those used to punish segregation inmates.

Indicative of the Defendants past actions it would serve no interest to the court, or the parties, for them to continue such criminal condcut, neglect of medicl needs, or other egregious acts described herein and in the pleadings of record in this case.

Plaintiff has a right to expect prison officials to follow its policies and regulations which is something they refuse to do, as it is common practice by IDOC to ignore their own rules. <u>Caldwell v. Miller</u> 790 F 2d 589 (7th cir 1986).

The purpose of the injuction is to restrain the Defendants, their agents, employees, representatives, and those in active concert and participation with them from subjecting the Plaintiff to the conditions described in the complaint when Plaintiff need to appear in court. All of which, as public officials, they are to refrain from in the first place.

As presented in the Motion for the injuction there are 3 reasonable, less expensive, and easily implemented solutions to forcing the Plaintiff to being transfered to Stateville to attend court. The Hardship to the Plaintiff if no injuction is granted is his FUTURE health and quite possibly his life as the heart condition, ulcer, and IBS can all be deadly in stressfull situtations such as writ transfers.

B. Balance of Hardship (Cont.)

...Essentially this preliminary injuction will protect the Plaintiff but will also protect the Defendants from their own selves and protect both from further damages and injuries as occurred to the Plaintiff in his permanent hearing loss due to Defendants deliberate indiefference.

C. THE PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

The likelihood of the success on the merits is strong evidence an injunction should issue. Adams v. A.R.D.C. of the Supreme Court of Illinois 801 F 2d 968 *7th Cir 1986)

Such a showing of success in the merits is a low threshold. Brunswick Corp v. Jones 784 F 2d 271 (7th Circ 1986). In fact a preliminary injunction should be granted even if the Plaintiff has less than a 50% chance of winning. C.B. Fleet Co Inc v Complete Packaging Corp 739 F Supp 392.

As most of the facts in the complaint and motion are identical or worse than those stated in cases concerning Stateville this is indicative of the likelihood of success.

Prison inmates are NOT to be subjected to retaliation or medical neglect for pursuing their legal claims. Arney v. Hayden 788 F supp 494.

The proof by the complaint, Exhibits, and affidavits of the criminal conduct of IDOC and the Defendants herein is also an indication of the probable success of this claim and clearly shows the merits of this case.

D. RELIEF SOUGHT WILL SERVE THE PUBLIC INTEREST

In this Motion and complaint of which it relates, the grant of relief will serve the public interest because it is always in the public interest for prison officials to obey the law.

"Respect for the law, particularly by officials responsible for the Administration of the States correctional system, is in itself a matter of the highest public interest." Duran v. Anaya 642 F Supp 510 at 527

"The constitution is th eultimate expression of the public interest." Llewelyn v. Oakland Co Pros. Office 402 F Supp 1379,1393

The tax payers of Illinois have a particular right to maintain their interest in the actions and inactions of prison officials.

ARGUMENT II

The Plaintiff should not be required to post security.

Usually the litigents who obtains the interim injunctive relief is asked to post security. Fed R.Civ. P. Rule 65(c). However the Plaintiff is a indigent prisoner and is completely unable to post security. Orantes-Hernandez v. Smith 541 F Supp 351,385; J.L. v Parham 412 F Supp 112,140; 442 US 584,99 S.Ct. 2493. In view of the actions by state government officials, the court should grant the relief requested without requiring the posting of security. The relief requested is simple and the cost to the Defendants, if any, is minimal as easy alternative exists if they c are motivasted to use them to prevent the Plaintiff serious harm.

CONCLUSION

Wherefore, Plaintiff prays this Honorable court will grant the relief requested in the Motion for Injunctive Relief and the Plaintiff prays that an order be made temporarily enjoining Defendants as suggested in the Motion and memorandume during the pendancy of the Civil Rights action AND for

CONCLUSION (Cont.)

...any other and such further relief as the court deems fit and proper.

Respectfully Submitted,

Dominick Giampaolo
Plaintiff, Pro-se
Reg. No R04860
Danville Corr. Ctr
3820 East Main
Danvile, Ill. 61834

## CERTIFICATE OF SERVICE

I, Dominick Giampaolo, pro-se, hereby certify that the proper number of the foregoing pleading has been mailed to the Clerk of the Court and the parties named of record, by enclosing copies in the U.S. mail with first class postage prepaid at the Danville C.C. located in Danville Il on the 3(0 day of September, 2008. This certificate is made under penalty of perjury pursuant to 28 USC §1746 and 18 USC §1621.

Signed this 3(0 day of September, 2008.

Dominick Giampaolo

## VERIFICATION

I, Dominick Giampaolo, pro-se, hereby certify and state under oath and penalty of perjury that the statements contained herein this Memorandum of law and Motion for Preliminary Injuction, are true and correct to the best of my knowledge and belief and that the exhibits attached hereto are what they are proported to be and that the informationcontained therin is true and correct to the best of my knowledge and belef. This certificate is made pursuant to 28 USC §1746 and 18 USC §1621. Signed this 3(0 day of September, 2008.

Dominick Giampaolo

## AFFIDAVIT OF DOMINICK GIAMPAOLO

I, Dominick Giampaolo, having personal knowledge of the following state;

That the medical record attached to this Motion for Preliminary injunction are my medical records as recorded by various doctors and nurse both from IDOC and the outside hospitals.

That I suffer from sever anxiety attacks when i learn that I have to attend a court writ at the Stateville Corr Ctr due to anticipating the lack of medical attention I always expereince while there. The visit of April 2007 was particularly memorable as I arrived with a ruptured ear drum, asked for medical treatment, was ignored, had officers and staff mock and harrass me making loud screeching noises to cause my ear more pain, and subsequently lost hearing in that ear.

The small cramped cells, double occupied, the roaches, moldy mattresses, excessive noise, sleep deprivation, mice, lack of cleaning supplies, lack of legal library access, threats by officers who knoe I have sued them in the past, lack of distrctions from the solitary-like confinement, and other conditions, especially lack of medical treatment and prescription drugs, cause me severe stress.

This stress causes migraines, ulcer pain, IBS pain, weight loss, and chest pains. The anxiety attacks leave me almost breathless and have caused my EKG readings to be abnormal due to what was diagnosed as 'left ventricular hypertophy' and 'pluerisy' which I understand is akin to Angina..

The court dates I will need to attend in the near future will, by IDOC policy, force me to be placed in Stateville C.C. where the conditions have not changed in the over 6 years I have been attending court.

The Motion of which this is attached is made in good faith and in the hopes it will prevent me future harm and prevent the real risk of death or further permanent injury. This affidavit made under penalty of perjury pursuant to 28 USC 1746 and 18 USC 1621 this 3ʳᵈ day of September, 2008.

Sincerely,

Dominick Giampaolo
R04860
Danville Corr. Ctr
3820 East Main
Danville, Il. 61834

ILLINOIS DEPARTMENT OF CORRECTIONS

EXHIBIT A-1

Hill Correctional Center

**Progress Notes**

GIAMPAOLO,
DOMINICK R04860

| | | | ID#: |
|---|---|---|---|
| Last Name | First Name | MI | |

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 11-5-04 9⁰⁵ pm | LPN Note - Rec'd call from Seg - Inmate c/o chest pain for about 3 hrs - then tell Seg c/o about them - (S) I have this hurting in the middle of my chest - It hurts when I try to take a deep breathe - It feels like a ball or something - (O) No sign of distress noted - color WNL - Skin w/o - 128/70 - 80-22-98³ Inmate has history of PUD IBS, Scoliosis, & anxiety attacks. (A) heartburn | (P) Gave Bottle of Maalox - 30 cc TID + before bed - Explained that the heart burn was causing him to have a panic attack. He admitted he did get more upset when he felt the heartburn, + started to get anxious. Instructed to stay up for @ least an hour after eating. — R. Mahaffey ___ |
| 11/8/04 12⁴⁵ pm | Nurse note Scheduled for Gen Med. Clinic for PUD + IBS to be completed prior to 11/27/04 - Reassessment in | |

Distribution: Offender's Medical Record

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

EXHIBIT A-2

ILLINOIS DEPARTMENT OF CORRECTIONS
**Offender Health Status Transfer Summary**

| Offender Information: | | | |
|---|---|---|---|
| Giampaolo | Dominko | | ID#: R04810o |
| Last Name | First Name | MI | |

Transferring Facility: **XIOOCC** Center

Date: **11.12.04**    Time: **2:30**    ☐ a.m. ☑ p.m.

---

**Transfer Screening** (completed by transferring facility health care staff)

Allergies: _Fish and Aspirin / Sulfa_    Food Handler Approved: _____

Current / Acute Conditions / Problems: _____

Chronic Conditions / Problems: _Irritable Bowel Syndrom Scoliosis    Stress / Panic_

Current Medications (name, dosage, frequency, and duration):

Acute Short-term: _____

Chronic Long-term: _Zantac 150 BID  MVI 1 tab a day  Bentyl 10 mg QID_

Chronic Psychotropic: _____

Current Treatments: _Zantac 150 mg  MVI tab  Bendyl comg_

Therapeutic Diets: _Ø_

Follow-Up Care: _MD visit_

Chronic Clinics: _General med – IBS_

Specialty Referrals: _Ø_

Significant Medical History: _irritable Bowel Syndrome  PUD  Hx Back Pain  Scoliosis_

Physical Disabilities / Limitations: _blurred vision  low vision_

Assistive Devices / Prosthetics: _Ø_    ☑ Glasses    ☐ Dentures

Mental Health Issues:  ☐ Hx Suicide Attempt: Date: __/__/__    ☐ Hx Psych Med  ☐ Hx MPC / STC  Substance Abuse: ☐ Alcohol  ☐ Drugs

R. & C. Use Only:  ☐ LAB  ☐ EKG  ☐ CXR  ☐ Dental  ☐ MEDS  ☐ MH  ☐ Other: _____    ☐ Packet Complete

Print Name and Title: _D Miller, PN_    Signature: _Daniel ___ PN_    Date: _11.12.04_

---

**Reception Screening** (completed by receiving facility health care staff)

Facility: _Stateville CC_    Date: _11.17.04_    Time: _8:30_    ☐ a.m. ☑ p.m.

Current Complaint: _IBS_    Assessment: _FHA_

Current Medications / Treatment: _See above_

Objective:

Physical Appearance/Behavior: _A/O x 3_
_Oriented, ? diarrhea_

Deformities: Acute/Chronic: _00010825_

T: _98.6_  P: _80_  R: _20_  B/P: _120/80_

Plan: Disposition:
☑ Health Information Given    ☐ Emergency Referral: _____
☐ Sick Call:  Urgent / Routine
  ☐ Medication Evaluation    ☐ Therapeutic Diet    ☐ Special Housing    ☐ Chronic Clinics
  ☐ Work / Program Limitation    ☐ Specialty Referrals    ☐ Other (specify): _____
☐ Infirmary Placement
☐ Other (specify): _____

Printed Name and Title: _Cheryl H. Cullen MSN_    Signature: _C Cullen MSN_    Date: _11.17.04_

---

**For adult transition center transfers only:**

I understand that medical and dental care are my responsibility while I am housed in a transition center. I also understand that if I am in need of health care and I cannot afford to pay for it, I may be transferred back into a facility within the Department that can provide my medical, mental health, or dental needs.

Offender's Signature _____    Date _____    Time _____    ☐ a.m. ☐ p.m.

Distribution:  Offender's Medical Record; Transferring Facility;
Receiving Facility

DOC 0090 (Eff. 9/2002)
(Replaces DC 873)

ILLINOIS DEPARTMENT OF CORRECTIONS

Hill Correctional Center          EXHIBIT B-1

## Offender Outpatient Progress Notes

**Offender Information:**

Last Name: *Giampaoh*  First Name: *Dominick*  MI: ___  ID#: *R04860*

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 10-8-05 9³⁰p | Lpn Note: Health Status Completed. *(signature)* Lpn | |
| 10/11/05 0930 | RN Note: S. setting on O.R. wing, feeling *unwell*. c̄ chest pains. Ch ⓐ chest discomfort. c̄ ⓑ arm discomfort X 48° "8" O- pulse 1-10 YS ⁱⁿ/⁹⁰ ⓑ ¹⁴⁰/⁹⁰ T-98° P 100 R 20 BlP R *(illegible)* O₂ Sat 96% R.A. Blood Clear. ∅ Cough. c/o emesis X 3 gm bars @4°. emesis black bloody stools emesis *blood in emesis* PRN WIP *(illegible)*. Start Pm 10-11-05. *Pulses + Bilat*. Edema A- alteration Compat | P ① *return to E.R.* for *(illegible)*. ② Dr. *Sisbarro* notified. ③ *(illegible)* 30cc NG ct BID PRN PRN X 3 days. ④ O₂ @ 2L Per NC. ⑤ Stat-EKG *(signature)* RN |

ILLINOIS DEPARTMENT OF CORRECTIONS

Hill Correctional Center

**Offender Outpatient Progress Notes**

EXHIBIT B-2

Offender Information:

Last Name: Siampaka  First Name: Dominick  MI: ___  ID#: R04860

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 10/11/05 0945 | RN Note<br>S. appears a little better.<br>O. VS-98-82-18  120/80<br>02 Sat 100% R.A. Removed<br>02. Capillary refill)<br>< 3sec. Alert & oriented<br>XIII ⊗ in w/o. Denies<br>HW was BS active)<br>XII guarded ⊕ and distention<br>pulses + strong. Inm<br>refused Inm to go out on<br>Court writ on 10/12/05.<br>"I don't want to go to<br>Statesville! they won't take<br>care of me! I do have<br>to appear in court. I'm<br>on the paper work!"<br>Inm appears to be more<br>concerned about his transfer<br>than his current<br>condition. | P-Dr. Sintron @ bedside<br>verbal orders rec'd-<br>② Give another 30cc<br>dose of mineral oil.<br>③ Dr Sintron reviewed<br>that EKG abnormal<br>c̄ PVC's.<br>④ Inm placed in confirm<br>for 23° observation<br>pending CBC, CMP<br>w/results.<br>⑤ CBC, CMP @ RC 3<br>dep. |

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

ILLINOIS DEPARTMENT OF CORRECTIONS

EXHBIT B-3

Hill Correctional Center

## Offender Outpatient Progress Notes

Offender Information:

Last Name: Giampaolo  First Name: Dominick  MI: ___  ID#: R04860

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 10/1/05 6:15 PM | M.D.<br>S) Pt says Ø CP described Ē 1x N752<br>He reports gets episodes of similar CP Ē stress dating back to 1998 & negative EST then before in prison. Had negative ER W/U in 8/98 Ē Ø Ø pleuryou. He wants to see about data individualized. Transport to hospital for his visit - but not decided whether he wants to go or not. He will √ Ē this proper authorities for that type<br>O) meds — say IBS active & for but no ___ Ē BM's<br>O) lungs — clean chest wall not tender ___ abd ___ soft nontender or guarding V/S mild tenderness epigastric ___ - W/U to the pale (normal for him)<br>EKG - NSR Ø Δ's<br>CBC - W/U ___ not anxiety vs ___<br>A) 1) Resolved CP 2) Anxiety 2' to pending court appearance 3) IBS | P) 1) Rev EKG, CBC, BMP in AM<br>2) Hemmocult all stool & nurse W/S √ color etc<br>3) D/C Tagamet<br>4) ↑ Prilosec to 20mg BID<br>5) Set up cardiac exercise stress test<br>6) Pt to discuss his visit issues with proper authorities<br>7) Advance diet to full liquids as tolerated ___<br>noted ___ 10/1/05 |

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

ILLINOIS DEPARTMENT OF CORRECTIONS

Hill Correctional Center                                 EXHIBIT B-4

## Offender Outpatient Progress Notes

Offender Information:

_Giampaolo,_                    _Dominick_                 ID#: _R04860_
Last Name                        First Name          MI

| Date/Time | Subjective, Objective, Assessment | Plans |
|-----------|-----------------------------------|-------|
| 10/12/05 3:15ᵖᵐ | RN note Blood drawn from R arm 8 Dig Voc for BMP and CBC. Sent to Lab Corp | WKY12803655 |
| 10/12/05 0745 | RN Note: S. ae was lifting my mattress yesterday at my property but ae think re mes of bruised my muscle ⓑ chest wall "8" 1-10 scale O. VS 98² - 82 - 20  138/72 O₂ Sat 98% R.A Denies SOB, skin w/d, pale, alert ex orientd x III. B/L lung cl.0 cough. abd sft. BS active x IV q abd. start Bcm 10/10/05 Denies N/V, loose stool black tarry stool. A- stable, alteration comfort | ① pending stats. ② RN as order. ─ D cont plan |

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

ILLINOIS DEPARTMENT OF CORRECTIONS    EXHIBIT C-1

Hill Correctional Center

**Offender Outpatient Progress Notes**

Offender Information:

_[signature]_ _[signature]_ ID# P04461

MEDICAL PROGRESS NOTES

| Date | |
|---|---|
| INMATE NAME: _[illegible]_ 9/6/06 4/0 | |
| INMATE IDOC# P04460 LOCATION OVB DATE _____ TIME _____ | |
| S: _[illegible]_ P. FH | |
| O: _[illegible]_ | |
| A: _[illegible]_ | |

DC 7101100 (Eff 07-98)
IL428-21866

---

**M.D. VISIT**

| WT | 160 lb | B/P | 132/88 |
|---|---|---|---|
| T | 98.0 | P | 68 | R | 18 |

⊕ chest pain/burni_c_
rad. to ⊕ axilla worse
c̄ insp.

Peak flow 500    Inmate states
9.1800    thl he has c hest pain
1820    since 9 PM, continuous.
& peeks w/ fire & burning
sensation in mid-axillary
area - 3/0 (L) ventricular _[illegible]_

ILLINOIS DEPARTMENT OF CORRECTIONS     EXHIBIT C-2

Hill Correctional Center

**Offender Outpatient Progress Notes**

Offender Information:

_Last Name_     _First Name_     MI   ID#: _____

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 9·18·07 13x | c/o xs c/o Denies smoking | |
| | Med + Proposal ~ 3/0 win since 18992 | Dt consulted about chest pain |
| | FIH· Father Heart problem by-pass surgery | Conference Primcare. |
| O | S/H smoke ⊖ Drink ⊖ Drug ⊖ | Dr Tiller to see |
| | CNS· NSR rr ② | |
| | R+ -CCo chest pain lust a minut | |
| | Bowel sgs No dysphagia | |
| | C m - w n 2 | |
| | PR - P1 deferred | |
| | A chest pain Atrial Necrosis | |
| | | |

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

EXHIBIT C-3

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Offender Health Status Transfer Summary**

CW1
9/20/06

**Transferring Facility:** _Klu_ **Center**

**Offender information:**
Last Name: _Gianpaolo_  First Name: _Domenick_  MI: ___  ID#: _R04860_

**Date:** 9, 19, 6   **Time:** 745  ☑ a.m. ☐ p.m.

**Transfer Screening** (completed by transferring facility health care staff): ☐ HIV Test & Counseling Offered (only transfers to ATC, parole, release or discharge)

**Allergies:** Fish
**Current / Acute Conditions / Problems:** 9/8/6, no D CP  **Food Handler Approved:** OK
**Chronic Conditions / Problems:** Stomach pain  Currently Seeing Psych

**Current Medications** (name, dosage, frequency, and duration):
  **Acute Short-term:** Tylenol PRN
  **Chronic Long-term:** Ø
  **Chronic Psychotropic:** Ø
**Current Treatments:** Ø
**Therapeutic Diets:** Gen
**Follow-Up Care:** Routine
**Chronic Clinics:** Ø
**Specialty Referrals:** Ø
**Significant Medical History:** ® Knee arthroscopy, S/P PUD, IBS, Hx back pain, Hx Panic attacks
**Physical Disabilities / Limitations:** Ø
**Assistive Devices / Prosthetics:** ® knee sleeve thru 10-1-76  ☑ Glasses ☐ Dentures
**Mental Health Issues:** ☐ Hx Suicide Attempt: Date: ___/___/___  ☐ Hx Psych Med  ☐ Hx MPC / STC  **Substance Abuse:** ☑ Alcohol ☐ Drugs

**Print Name and Title:** Kiersty (CN2att R)  **Signature:** Kiersty (CN2att R)  **Date:** 9, 19, 6

**Reception Screening** (completed by receiving facility health care staff):
**Facility:** SHF  **Date:** 9, 26, 6  **Time:** 9  ☐ a.m. ☑ p.m.
**Subjective:**
  **Current Complaint:** Ø  **Assessment:** FHTV
  **Current Medications/Treatment:** Ø
**Objective:**
  **Physical Appearance/Behavior:** open wounds & rashes on knuckles
  **Deformities: Acute/Chronic:**
  **T:** 98  **P:** 64  **R:** 16  **B/P:** 39  122

**Plan: Disposition:**
☐ Health Information Given   ☐ Emergency Referral: ___
☑ Sick Call: ☐ Urgent ☑ Routine
  ☐ Medication Evaluation  ☐ Therapeutic Diet  ☐ Special Housing  ☐ Chronic Clinics
  ☐ Work / Program Limitation  ☐ Specialty Referrals  ☐ Other (specify): ___
☐ Infirmary Placement: ___
☐ HIV Test & Counseling Offered (only transfers from R&C)
☐ Other (specify): ___

**Printed Name and Title:** PS  RN  **Signature:** PS  **Date:** 9 2/ 6

**For Adult Transition Center transfers only:**
I understand that medical and dental care are my responsibility while I am housed in a transition center. I also understand that if I am in need of health care and I cannot afford to pay for it, I may be transferred back into a facility within the Department that can provide my medical, mental health, or dental needs.

**Offender's Signature:** ___  **Date:** ___  **Time:** ___  ☐ a.m. ☐ p.m.

Distribution: Offender's Medical Record; Transferring Facility; Receiving Facility

DOC 0090 (Rev. 1/2006)

944

**Offender Outpatient Progress Notes**                    EXHIBIT D-1

_____ **Pinckneyville Correctional** _____ **Center**

| Offender Information: | | |
|---|---|---|
| Giampaolo | Dominick | ID#: R04860 |
| Last Name | First Name      MI | |

Treatment Protocol:
Earache/Ear Wax Impaction

Plans: Slight

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 4-9-07 9:30 AM | **S.** Duration: 4 days | P. **MD Referral (circle)** if redness with fever over 10.1, acute pain, drainage with swelling, hearing |
| | Ear: (R) Some pain (L) worse | Loss, inability to visualize TM, neck node enlargement/pain or symptoms that fail to |
| | Have you recently had a cold, cough, fever or sore throat?   Y/(N) | Respond to treatment protocol. |
| | Pain?   (Y)N   If yes, describe (1-10) | **NO MD Referral: ( check as applicable)** Earache: |
| | Most severe: (5) | 1. Tylenol 2 tabs every 4-6 hrs PRN (issue 10) |
| *Non-smoker | Drainage noted:   Y/(N)  Hearing Loss   (Y)N  Clicking when swallowing | Earwax: 1. Ear wax treatment drops (for excess ear wax) |
| | Have you put anything in your ear?   (Y)N  If yeas, what?   Q-tip | Use as directed, (Debrox) instill 5-10 drops to affected ear canal 2x a day x 7 days. |
| | Past history of earaches, ear infections or ear surgery:   (Y)N   (L) Surgery | 2. Assess $2.00 co-pay.   (Yes)   No |
| | | **Patient Teaching: (check as applicable)** |
| | **O.**   96.0   P 72   R 16 | 1. Do not put anything in your ears. |
| | BP 110/60   WT 142 | 2. Medication use. |
| | Assess ear, nose throat for swelling, drainage or redness. (R) ear TM slightly swollen | 3. Proper ear cover (hat in winter or windy weather) |
| | Describe: (L) ear TM swollen c̄ redness noted to canal odrng | 4. F/U sick call 48 hours is symptoms persist or worsen. |
| | Color TM: (R) pearly (L) dull   Y/(N)  Perforation Visualized:   Y/(N) | |
| | Cervical node enlargement or pain?   Y/(N)  Test hearing: Diminished   Y/(N)   R/L | |
| | **A.** Alt in comfort | **Nurse Signature** E. Herbr |

Distribution: Offender's Medical Record

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

_____ Center

| Offender Information: | | | |
|---|---|---|---|
| Giampaolo | Dominica | | ID#: R04860 |
| Last Name | First Name | MI | |

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 4/9/07 | mp note - | |
| 1200 | s ↑ discomfort Ⓛ | p X-ray Ⓛ Knee |
| | knee | |
| | - ᵖʳᵒᵐ Ⓛ knee | |
| | ō ery | |
| | ō effusion | |
| | N̄ Cerebralgia | |
| | s ↑ Ⓛ ear hurting | p Observe |
| | - h/o prior infection | |
| | Ⓛ knee | |
| | o Ears - perforated | |
| | Ⓛ Tm. | |
| | - ō inflam | |
| | - ō D/C | |
| | A Perforated Ⓛ Tm | [signature] |

Printed on Recycled Paper

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

AFFIDAVIT                    EXHIBIBT E-1

I, Demeatreas Whatley, affirm and state that I have personal knowledge of the following and that what is stated herein is true and correct to the best of my knowledge and belief;

From November of 2007 to July of 2008 I was a 'writ guest' at the Stateville Corr. Ctr. in Joliet, IL. My stay there was in F-House and in deplorable conditions. Previously, the conditions were the same.

On arrival I was subjected to a very humiliating body cavity search in front of about 80 other inmates. Officers not trained in medical  knowledge and with no medical persons present ask inmates to strip, open mouths, spread buttocks, and other invasive procedures.

After the search I was sent to F-House which is a 4 tier panaoptigon containing about 200 double occupied cells. The cells are appx 40 sq. ft with less than 10 sq ft of living space for 2 inmates. I was not allowed to bring books, electronics, pens, paper, sweat clothes, or envelopes. In the summer the cells got very hot, over 100°F and writ guests get no fans. The segregation inmates housed in the same F-House get their fans, radios, TV's, books, sweat clothes, electronices, and can order commisary.

Cleaning supplies are not given and the cells are dirty and infested with roaches and mice. The noise level in F-House is very loud and often deafening in its volume making uninterupted sleep impossible. New or replacement uniforms are very rarely given and laundry service is at best unreliable. I was only allowed as much yard time as the segregation inmates and less shower opportunities than seg. inmates. Other thatn the 5 hrs of yard once per week I was locked in my cell 24 hrs per day. In the winter months it got extremely cold and without sweats the single blanket given was inadequate to protect from the cold.

Wearing used and dirty shoes (given by staff) is the policy when going to court and it is unhealthy and unsanitary. I complained to the staff about having chest pains and was told by medical technician Semour (sp) to stop excercising and drink water. I came back to Danville and was told I had pneumonia, (See attached copy of medical record).

In order to challenge my case I must attend court and each time will be subjected to these conditions which have persisted at Stateville for many years. Once I arrived I had court continuances and was forced to stat. These were NOT temporary conditions as I was there 9 months which is longer than most of the segregation inmates in that same housing unit who are being punished for serious rules violations such as stabbing imates or officers.

The consitions caused me mental anguish, stress, physical discomfort and pain, and pneumonia. I have talked to many inmates who have given up their court challenges to their cases just to get out of or avoid those conditions at Stateville.

I understand that this affidavit may be used in a possible class action suit and make it of my own free will.

This affidavit made under penalty of perjury pursuant to 28 USC §1746 and 18 USC §1621.

Dated: _9-1-08_

Signed, _Demeatreas Whatley_

Demeatreas Whatley
B31316
Danville Corr. Ctr
3820 East Main
Danville, IL. 61834

EXHIBIT E-2

### BLOOMINGTON RADIOLOGY, S.C.
2200 Fort Jesse Road, Suite 280
Normal, IL 61761
309-452-1788

April 23, 2007

Patient Name:  Whatley, Demetreas
Patient #:  B31316
DOB:  1/23/72
Dr. Ameji
Danville Correctional Center

CHEST –ONE VIEW  4/20/07

INDICATION:  cough.

FINDINGS:  There is infiltrate in the left upper lobe indicating pneumonia.  The remainder of the lungs are clear.  Heart is normal.

IMPRESSION:  Left upper lobe pneumonia.

Signed_____
Chung H. Lee, M.D.

CHL:eg
DIC: 4/23/07

Films from Danville Correctional Center

DANVILLE CORRECTIONAL CENTER          4-24-07
MD REVIEWED_____
SCHEDULE AND OR FILE
SIGNATURE_____
DATE_____

AFFIDAVIT

I, Philip McDowell, the undersigned affiant, certify and state that I
have read the following affidavit and certify under oath and under penalty
of perjury that the following is true and correct;

That I am an inmate in the Illinois department of Corrections and I
have been challenging my criminal convictions in post-trial proceedings
in which I am pro-se.
When I have court dates I am transfered as a 'writ guest' from the
Danville Corr Ctr to the Stateville Corr. Ct in Joliet, IL for a minimum
of 2 weeks. I was there on writs in OCtober '06 for 2 weeks; April 18-May
16 (28 days) 2007; May 30-June 14, 2007; July 15 to Sept 9, 2007 (7weeks);
October 24 to NOvember 7, 2007; January 2 to 16th , 2008; February 20 to
March  5, 2008; and April 30 to Mat 14, 2008.
Each time I go on a writ to Stateville I am strip searched in front of
about 80 inmates on a filthy floor then left in that room, or another
nearby, for hours before going to a cell. Some of these writs I was placed
in 'NRC' and some in 'F-House' and in neither place did I receive any of
the privileges of a general poplation inmate. I have been deprived any
day room time, clean matresses, a pillow, cleaning supplies for the cell,
regular laundry service, uses of the law library, access to legal personnel,
a fan even when temperatures are above 90°F and I am on the 3rd or 4th
tier of non-air conditioned buildings, use of a phone, and have not been
alllowed most of my property including no bbooks, magazines, electronics,
commissary food, and even my leagal papers.
In January of 2008 because of the problem of getting my legal papers:
I have been forced to spend more time in these deplorable conditions and
forced to continues my actual innocense claim. I obatained a court order
from Coook County Judge Colleen McSweeny Moore and depite this on May 2, 2008
when I had court Officer Bowling (badge No. 4882) of Stateville C.C.
refused to allow materials I needed for my pro-se court proceeding
forcing another delay. These above conditions and behaviors of the Stateville
officers occurs in an open and recurrent manner and is easily observed by
their superiors and condoned by their inaction desoite numerous complaints.
When I complain of these conditions to officers I am often threatened with
segregation.
During my stay in F-House on May 2, 2008 I observed that an inmate
had been killed by his cellie in cell 461, The Day before on May 1, 2008
there was another inmate killed by his cellie in cell 302. In cell 222
there was a suicide and on May 7, 2008 in 'NRC' another suicide. This
is due to Stateville mixing inmates of all different races, backgrounds,
and security levels together with no regard to their health and safety.
I am forced on these writs and these unsafe conditions begin with the
bus rides where I am chained to up to 40 other inmates and place in a
bus with no seat belts. Then to be randomly placed with inmates that may
be crazy, have a  history of violent cellie assaults, or who may take
out their anger at the 'writ guest' conditions on their cellies is against
IDOC's own rules and is unecessary and ubsurd.
I have talked to many inmates who have given up on their post-conviction
proceedings because they cant stand the conditions and punishment of
Statevilles writ guest system.
The matresses in F-House are stained with feces, urines, infested with
bugs, and have huge rips in them. When I asks for a new one I am threatened
with segregation. THe cells have raoches and mice and during the summer
the temperatures get over 100°F.
I have suffered sleep deprivation while in 'NRC' with no more than 2-3
hrs of uninterupted sleep due to officers waking up inmates during count
even when inmates are in plain view adn due to 2am breakfasts and 9am
lunches. In F-House the noise level is unbearble and not conducive to

sleep. The bars are mteal or doors of steel. Officers and inmates yell across the appx. 30 yd open area in the panaoptigon 4 tier F-House. The noise level goes unchecked by the officers and makes sleep near impossible. This affects my ability to represent myself in court and is literally 'torture' by geneva convention standards.

To be deprived privileges when I have violated no IDOC rules is just one form of coercion to inmates who want to challenge their cases. I have observed the inmates in F-House segregation receive many of the privileges that the 'writ guests' have been denied. I was even placed in a seg cell in F-House, No. 144, from May 20 to June 14th 2007 and my cellie had more property than I had been allowed to bring. THe inmates in Stateville segregation are some of the most violent in IDOC and many have stabbed or killed officers or other inmates yet after a short time in seg. they get their TV's with cable, they get their fans, books, envelopes, law library access, envelopes, commissary items, laundry, more showers, and better medical attention.

I have observed that Stateville has the supplies and resources to provide the 'writ guests' all the items given their general population inmates or to allow them to bring property items from their regular institution but they actively choose to not do so. The conditions are deplorable, unsafe, dangerous, and unecessary. They have caused inmates death and will continue to do so in the future.

This affidavit is made of my own free will and I understand that it may help in a possible class action suit of which I am willing to be a part of and participate in.

I further sayeth not.

This affidavit being made under penalty of perjury this 5 day of June , 2008, pursuant to 28 USC 1746 and 18 USC 1621 to the best of my knowledge and belief.

Philip McDowell
B46854

EXHIBIT F-2

## AFFIDAVIT

I, JAMES E. BLACK    , affirm and declare under penalty of perjury pursuant to 28 USC 1746 and 18 USC 1621 the following to be true and correct to the best of my knowledge and belief;

On or about the months of March and May of 2007 I was sent to the Stateville Correctional Ctr in Joliet, IL to attend court sates I had in criminal court. While at Stateville as a 'writ guest' I was subjected to very public body cavity searches in front of about 80 other inmates which were done in a humiliating and degrading manner.

After this initial reception I was placed in segregation like conditions with other writ guests where I was unable to uses the phone, shower, buy cosmetics, get clean clothes, cleaning supplies, order commisary, and was not allowed to have books, writing utensils, or envelopes, electronics or legal book access. This despite the fact that inmates being held in the same unit that were there for real segregation punishment for stabbing officers or other inmates get all of these things.

The entire stay I was stuck in a cell rated and approved for one person but shared by two for 24 hrs per day.

While on the writ in March of 2007 I was subjected to nightly sleep depravation due to correctional officer Hester's preaching of christian doctrine at nearly shouting levels saying the beniefits of food and how God provides it from the hours of 2AM to 6AM. I observed her chastising Muslim inmates who objected to this and she gave them disciplinary tickets because they complained after calling them heathens and saying they were going to Hell.

Both times I was there I was denied any cleaning materials for my filthy cell. The March writ lasted 2 weeks and the May writ was 5 weeks all of which time these condtions existed despite requests by me and others for yard, commisary, books, law library access, hygene items, clean uniforms, and uninterupted sleep.

The sleep deprivation of the 'NRC' center of Stateville is caused by their unecessary count procedure every 2 hrs with officers waking up inmates that are in plain sight by banging on the cell doors and windows.

The privileges that general population inmates are given in IDOC are taken away from me when I go on writs to court without any disciplinary infraction by me or other writ guests.

The officers in 'NRC' would smoke in the lower floors in empty cells which would set off the fire alarms in the middle of the night and day making it even more difficult to get any amount of sleep. I filed numerous grievances with IDOC none of which were answered or returned. When I complained to the lieutenants they told me 'don't come to prison' and the conditions have caused me to dread going back to court to challenge my convictions. Most inmates I tilak to give up on ther post-conviction claims after they are subjected to the conditions at Stateville and the punishment given to writ guests by IDOC for no legitimate reasons.

This affidavit is made of my own free will and l understand that it may help in a possible class action suit of which I am willing to be a part of and participate in.

I further sayeth not.

Dated: ~~JUNE 16 2008~~

Signed, _James E. Black_

JAMES E. BLACK
B-56790

EXHIBIT F-3

## AFFIDAVIT

I, Jeffrey Knight, the undersigned affiant, certify and state that I have read the following affidavit and have personal knowledge of the information therein and certify under oath and under penalty of perjury as provided by 28 USC 1746 and 18 USC 1621 state the following to be true and correct to the best of my knowledge and belief;

That I have been incarcerated at the Stateville Corr. Ctr in Joliet, Il while on court writs approximatley 30 times in the last 6 years. The most recent times where November 2007 and Febrauary 2008.

Thse last court writs were in the 'NRC' center of Stateville C.C. and I experienced a violation of my constitutional rights when the officers in charge forced me to be strip searched in fron of appx. 80 other inmates on a filthy floor despite IDOC's rules to the contrary. The method of the strip search included body cavity searches with officers checking all orafices visually with no medical personnel present.

While in 'NRC' I suffered daily sleep depravations due to the serving of breakfast at 2:30 AM and other disruptive and uneccessary conduct of the officers and staff. A 9pm they count inmates and those that may be asleep are told to 'move' even though the inmates are in plain view. The officers bang on the doors to ensure inmates wake up. This is done again at 11pm, 6:30 AM, 12pm, 3pm and meals at 9AM (lunch) and dinner at 5pm giving no chance to sleep more than 2-3hrs uninterrupted.

The lack of sleep makes it very difficult to attend court as bening tired affects concentration and understanding.

While in 'NRC' and on my other writ visits to Stateville C.C. I was never given a pillow making sleeping even more difficult.

At all times as a 'writ guest' at Stateville C.C. I was denied almost all privileges that general population inmates at Stateville, and the other prisons I was transfered from, receive. The loss of privileges and property are more restrictive than inmates in segregation. I have been denied books, magazine, electronics, pens all which inmates in segregation are allowed to have. I had no day room time to use phones or showers, no law library access, and as a result had my constitutional rights violated.

I have observed inmates drop their criminal litigation so as to avoid the conditions at Stateville or obtain long delays to avoid stays that would last anywhere from 1 month to 1 year.

The cells in Stateville are filthy and we are given no cleaning supplies to clean them, rarely is the laundry done or a change of uniform given, and the cells are infested with roaches and mice. Complaining to the officers does no good as they ignore complaints and threaten those who persist.

This affidavit is made of my own free will and I understand that it may help in a possible class action suit of which I am willing to be a part of.

I further sayeth not.

This affidavit being made under penalty of perjury this _13th_ day of _August_, 2008, pursuant to 28 USC 1746 and 18 USC 1621.

_Jeffry Knight_
Jeffry Knight
K73004
Danville Corr. Ctr
3820 East Main
Danville, IL. 61834

 **Sherman Hospital**
*an affiliate of Sherman Health Systems*
934 Center Street • Elgin, Illinois 60120-2198
847-742-9800

**Sherman** Family HealthCare
4900 South Route 31 • Crystal Lake, Illinois 60012
815-455-3650

**SHERMAN HOSPITAL**
**EMERGENCY DEPARTMENT**

Giampaolo, Dominick
AGE: 32   SEX: M

CHIEF COMPLAINT:  Chest pain.

HISTORY OF PRESENT ILLNESS:  This 32-year-old male complained of acute onset of
non-radiating, nonexertional left-sided chest pain occurring 30 minutes prior to
arrival and has been constant.  Pain is increased with deep inspiration and
movement.  No alleviating factors. No fever, calf pain, or edema.  He describes
numbness to his hands and feet.  Mild dyspnea is associated with the above.  He
states he does have a chest pain in the past.  He was seen at Alexian Brothers,
discharged from the Emergency Department and told that if he had persistent pain
he may need a MRI scan.  The patient did not follow up.  No skin rashes.  There
is no history of drug use.

PAST MEDICAL HISTORY:  Irritable bowel and chest pain (nursing notes angina.
Patient did not state this to me).

MEDICATIONS:  None.

ALLERGIES:  None.

SOCIAL HISTORY:  Negative for tobacco and cocaine.  Patient is currently in
police custody.

FAMILY HISTORY:  Noncontributory.

REVIEW OF SYSTEMS: Constitutional - No fever or anorexia.  ENT - No recent upper
respiratory illness.  Cardiac/pulmonary as noted.  In addition, no dyspnea on
exertion (paroxysmal nocturnal dyspnea or orthopnea).  No palpitations.
Gastrointestinal - No abdominal pain, nausea, or vomiting.

PHYSICAL EXAMINATION: GENERAL APPEARANCE: Alert, anxious appearing male.  VITAL
SIGNS: Temperature 98°.  Pulse 125.  Respirations 40.  Blood pressure 106/47.
HEENT:  Conjunctivae are anicteric and moist.  Oral mucosa is moist.  NECK:  Neck
veins are flat.  No carotid bruits.  Trachea midline.  LUNGS:  Clear and
tachypnea.  CARDIAC:  Rapid but regular.  ABDOMEN: Soft and nontender.  MENTAL
STATUS:  He is alert, anxious, and nontoxic appearing.  Speech is fluent and
coherent.  Behavior is appropriate.

DIAGNOSTICS STUDIES: Pulse oximetry is normal at 100%.  Electrocardiogram shows
sinus tachycardia.  There is left ventricular hypertrophy by voltage criteria.
The chest x-ray is normal.

EMERGENCY DEPARTMENT COURSE:  Droperidol is given with resolution of his
hyperventilation.  Repeat vital signs - Pulse 80.  Respiratory rate 18.  Blood
pressure 120/88.  Pain still persists.  Motrin 800 milligrams is ordered and will
be given.

IMPRESSIONS:        (1)   NONSPECIFIC PLEURITIC CHEST PAIN TO THE LEFT CHEST WALL.
                    (2)   HYPERVENTILATION.

DISPOSITION:  Home.

CONDITION:  Good.

D:  12/07/98   2021
T:  12/08/98   0035
TR: 25

Giampaolo, Dominick
MR #: 521211

DIAGNOSES:    (1)    ATYPICAL CHEST PAIN.
              (2)    PLEURISY.


_____
DAVID W. HILL, JR., M.D.

D:  08/18/98  0225                              Giampaolo, Dominick
T:  08/18/98  0518                                MR #:  000897818
TR: 28

EXHIBIT G-3

ADDRESSOGRAPH

**Sherman Hospital**
an affiliate of Sherman Health Systems
934 Center Street • Elgin, Illinois 60120-2196
847-742-9800

**The Ambulat Medical Center**
a service of Sherman Hospital
4900 South Route 31 • Crystal Lake, Illinois 60012
815-455-3650

GIAMPAOLO, DOMINICK
05/23/66 , 80878634
PHYSICIAN, ER
12/07/98 ER

| PAT ACCT NO. | ADM DATE | TIME | PAT SVC | ADM DL | | | | |
|---|---|---|---|---|---|---|---|---|
| 80878634 | 12/07/98 | 19:28 | ER | EMERGENCY | 521211 | | | 11 |

PATIENT NAME/ADDRESS    PHONE/COUNTY    AGE   CD   BIRTHDATE   SEX   RACE   M/S   RELIGION

**A T I E N T**

GIAMPAOLO, DOMINICK    630/766-7681    32 Y 05/23/66 M   C   S    R
128 HAMILTON    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
BENSENVILLE, IL 60106    KAN

ACCIDENT DATE    TIME    CODE
:00

ADMITTING PHYSICIAN CODE/NAME     ATTENDING PHYSICIAN CODE/NAME

978 PHYSICIAN, E     978 PHYSICIAN, E

ADMIT CODE/DIAGNOSIS     ALLERGIES

SHARP LEFT CHEST PAIN     NKA

INITIAL COMPLAINT

**H I S T O R Y**

TIME SEEN

| | ORDERED | TO LAB | FROM LAB |
|---|---|---|---|
| CBC | | | |
| CHEM-6 | | | |
| AMYLASE | | | |
| PT/PTT | | | |
| U/A | | | |
| ABG | | | |
| RAPID STREP | | | |

**E X A M   F I N D S**

EKG:
☒ ORDERED   TO X-RAY   FROM X-RAY
☒ CHEST PA —   ☐ PORT C-SPINE
☐ CHEST PORT   ☐ LAT C-SPINE
☐ ANKLE   ☐ C-SPINE
☐ FOOT   ☐ L/S C-SPINE
☐ HAND   ☐ L/S OBLI
☐ WRIST
☐ OBST

TIME SEEN

Deporidol 25 mg ... 1930

Motrin 800 mg ...

**T R**

NOTIFIED: TIME
☐ FAMILY   ☐ ADMITTING
☐ POLICE   ☐ DCFS
☐ CORONER   ☐ SOCIAL SERVICE

DISPOSITION   TIME
☐ HOME
☐ TRANSFERRED TO:   EPD
☐ ADMITTED: ROOM NO.

**M E N T**

DISCHARGE INSTRUCTIONS

DISCUSSED CASE WITH

REFERRED TO: _____ IN ____ DAYS

_____ TO THE EMPLOYER

☐ RETURN TO WORK TODAY ☐ RETURN TO WORK TOMORROW ☐ RETURN TO WORK IN ____ DAYS ☐ REGULAR DUTIES ☐ ALTERNATIVE DUTIES FOR ____ DAYS

I AUTHORIZE SHERMAN HOSPITAL AND/OR THE CRYSTAL LAKE AMBULAT TO RELEASE MEDICAL INFORMATION RELATIVE TO THIS INJURY TO MY EMPLOYER AND ITS INSURANCE CARRIER.

PATIENT SIGNATURE

_____ TO THE SCHOOL
PLEASE EXCUSE HIM/HER
☐ SCHOOL   ☐ PHYSICAL EDUCATION CLASSES
FOR ____ DAYS

SEE _____ M.D IF NOT IMPROVED OR SYMPTOMS WORSEN IN 24 HOURS

FINAL IMPRESSION    CPT CODES

ICD-9 CODES

CONDITION ON DISCHARGE/TRANSFER
☐ GOOD ☐ FAIR ☐ SERIOUS

A.N. SIGNATURE

PHYSICIAN'S SIGNATURE

PATIENT SIGNATURE
I HAVE RECEIVED AND UNDERSTAND THE INSTRUCTIONS GIVEN TO ME

GIVEN: _____ INSTRUCTION SHEET

MEDICAL RECORDS

Date: 12/7/98　Time: 1917　Patient Name: GIAMPAOLA, DOMINICK　　　Sex: M　Age: 32Y

P—MD: STRUGER　　　　Triaged By: ial　　Language: English　Interp:　　　Where:

P..oem/Subj SHARP LEFT CHEST PAIN WITH NAUSEA

Objective: HYPERVENTILATION ON ARRIVAL.

LMP:　　　　Imm:　　　TB: No　Tetanus: No　Work Area: Major　　　Arrival: Ambulance

Medications　ntg　　　　　　　　　　　　　　　　　　Acuity: Level2

Allergies:　NKA　　　　　　　　　　　　Smoker　No　DV: No

Past History　irritable bowel, angina　　　　　　　　　　Source: Patient

V.S. Time:　　　BP: 106/47　Pulse: 125　Resp: 40　Temp: 98　　Oral　　O2Sat: 100　WtKg: 0.0

| Time | B/P | P | R | T | NURSING NOTES |
|------|-----|---|---|---|---------------|
| 1917 | | | | | Pt presents c̄ EPD + Ems- c̄ sudden onset of |
| | | | | | sharp ① chest pain and nausea, Some radiation |
| | | | | | of pain. Alert- hyperventilate- spasms to ↑ extremities |
| | | | | | Pt encouraged to clow breath - NKB 50₂ applied |
| | | | | | c̄ mp → ST. Pt had 1 NTG en route - stale no relief. Stm |
| | | | | | w/o EKG in progress |

| Time | Source | Intake | Output | DISPOSITION CONDITION (CIRCLE APPROPRIATE DESCRIPTIONS) |
|------|--------|--------|--------|---------------------------------------------------------|

| LOC | SKIN | LUNGS | GAIT | PAIN | SPEECH |
|-----|------|-------|------|------|--------|
| ALERT | PINK　WARM | CLEAR | STEADY | 0-NONE | CLEAR |
| ORIENTED | PALE　COOL | WHEEZING | UNSTEADY | 123-MILD | IMPAIRED |
| CONFUSED | CYANOTIC　DRY | RALES | | 456-MOD | NORMAL FOR PT |
| LETHARGIC | DIAPHORETIC | RHONCHI | | 789-SEVERE | |
| COMATOSE | | | | 10-WORST POSS | |

| EDRN SIGNATURE | TIME | EDRN SIGNATURE | TIME |
|----------------|------|----------------|------|
| 1) | | 2) | |

PT. BELONGINGS

CIRCLE ONE: PATIENT / FAMILY / OTHER

PSYCHOSOCIAL/FUNCTION. NEEDS

CIRCLE ONE: YES / NO

| TOTAL | REPORT GIVEN TO | REFERRAL |
|-------|-----------------|----------|

GIAMPAOLA, DOMINICK
05/23/66　B0878634
PHYSICIAN, ER
12/07/98 ER
521211

**EMERGENCY NURSING RECORD**

TOP COPY-MEDICAL RECORDS　　BOTTOM COPY-PHYSICIAN

ILLINOIS DEPARTMENT OF CORRECTIONS    EXHIBIT G-5

## Offender Physical Examination
DANVILLE CORRECTIONAL_____ Center

**Offender Information:**

Last Name: Giampaolo    First Name: Dominick    MI:    ID#: R04860

Date: 5/14/07

Time: 11:30  ☑ a.m. ☐ p.m.

Race: ☑ White ☐ African American ☐ Asian American ☐ Hispanic ☐ Native American ☐ Other____

Gender: ☑ Male ☐ Female    Date of Birth: 5/23/67

| | Yes | No | Explanation: |
|---|---|---|---|
| Hx reviewed | | | |
| Lab reviewed | | | |

| Subjective: Condition | Yes | No | Explanation: |
|---|---|---|---|
| Allergy | ☑ | | Ash Cigarettes |
| Substance Abuse | | | |
| a. Alcohol | ☐ | ☑ | |
| b. IV Drugs | ☐ | ☑ | |
| c. Other Drugs | ☐ | ☑ | |
| d. Hx, drug/alcohol withdrawal | ☐ | ☑ | |
| Shared Needles | | | |
| Sexual Contact with: | | | |
| a. IV drug user | ☐ | ☑ | |
| b. Prostitute(s) | ☐ | ☑ | |
| c. Multiple Partners | ☐ | ☑ | |
| Homosexual Activity | | ☑ | |
| STD | | ☑ | |
| HIV+/AIDS | | ☑ | |
| Blood Transfusions | | ☑ | |
| Three or more months of: | | | |
| a. Fever | ☑ | ☐ | |
| b. Diarrhea | ☑ | ☐ | |
| c. Night Sweats | ☐ | ☑ | |
| d. Persistent URI | ☐ | ☑ | |
| Weight Loss (>15 Lbs.) | ☒ | | - 30 lbs |
| Lymphadenopathy | | ✓ | |
| Fatigue | ✓ | | 1-2pm q afternoon |
| Other (Female) | | | |
| a. Mammography  NA | ☐ | ☐ | G_____ P_____ AB_____ LNMP_____ |
| | | | Date/Results:_____ |
| b. Family Hx Breast Cancer | ☐ | ☐ | If yes, family member:_____ |
| c. PAP Smear | ☐ | ☐ | Date/Results:_____ |

**Past Hospitalizations:**

Diagnosis: Ulcer

Date(s): 10/06

Hospital: Galesburg Infirmary

Location: Galesburg, IL

Diagnosis: Chest Pains (Angina

Date(s): 10/06

Hospital: Alexian Bros Hosp

Location: Elk Grove Village, I

Distribution: Offender's Medical Record    Side1    DOC 0099 (Eff. 9/2002)

Printed on Recycled Paper    (Replaces DC 872)

EXHIBIT G-6

(QNH2$P)                    07/15/97 07:41 PM      PAGE 002

I WOULD RECOMMEND AN UPPER GI AND SMALL BOWEL FOLLOWTHROUGH TO
COMPLETELY EXCLUDE INFLAMMATORY BOWEL DISEASE; HOWEVER, IF THIS IS
NEGATIVE, HE WILL NEED TO BE PLACED ON TREATMENT FOR IRRITABLE BOWEL
SYNDROME ALONG WITH MANAGEMENT OF HIS UNDERLYING PSYCHOLOGICAL
DIFFICULTIES.

D:  07/12/97
T:  07/14/97
R:  07/15/97
ATTENDING:  DRUGAS G.M MD
ORDERING :
DICTATING:  MCKENNA, M.E.    MD
MD ID #:  0482
        CC:
JOB NUMBER:  1094
L1519312.KLG/SH
-ELECTRONIC SIGNATURE

LAST PAGE